United States v. Wright May it please the Court and Counsel, Elizabeth Pollack on behalf of the appellant Talon Wright. And we are here to review the finding that Mr. Wright's ex-girlfriend had actual authority to authorize a forensic search of his personal computer, leading to the discovery of illicit material. And the defendant's position is that there was no actual authority in this case for several reasons. We need to discuss apparent authority as well. I can do that. There was no finding made by the District Court on apparent authority, but under either actual or apparent authority, this case should be reversed. In terms of the actual authority argument, the District Court focused solely on the past relationship of Ms. Hamilton and Mr. Wright. And what was determined at the evidentiary hearing was that she may have had joint access or control over this computer while their romantic relationship was ongoing in May of 2015, but that at the time that the consent was given, that she had disclaimed that authority when she was looking for things and was preparing to move out of their joint residence. Mr. Wright, that computer belonged to him. What evidence is there of a disclaimer over authority for the stuff that he left behind? When Investigator McNaught specifically asked her, who's those computers, where she said, those aren't mine, I know nothing about them. And so she specifically told the investigator, I don't own those computers, those don't belong to me, I'm not taking them with me. It's not a question of ownership, that's not the key to their actual or apparent authority. She also said, we all use them, the kids use them, I use them. She said we used to use them. So the joint access of checking the Skyward, which is the Urbana Middle School grade system, this search was done August 1st, 2015. And so she was using the computer, the evidence shows there are no other dates that were ever mentioned as to when she was using that computer. And so it can be inferred that it was at the end of the school year and potentially in the beginning of the summer. But she did say, and this is a distinction that is not present in pretty much any of the other case law that has established actual authority over a computer, is that all of the other cases, the people who were giving the consent to search were in active participatory relationships and had active, presently had control over the computer. That is not true in this case. Well, she did presently have control over the computer because he was not living there, and although she was in the process of moving out, she still had constructive control over everything that he left behind. This is really a case more of apparent authority rather than actual authority because of the ambiguity about the password protection issue. And I think that's the real pressure point in the case, is whether the ambiguity, as I said, about whether the computer was password protected or whether just the Internet access was password protected, defaults this case into apparent authority rather than actual authority because the cases suggest that nothing in this circuit but the cases in other circuits suggest that if you've got a password-protected computer, there can be no actual authority. Right. And the evidence was unclear on that count in the district court. The forensic preview of the computer was not presented into evidence, so we were unable to verify or not whether or not there was password protection. The defendant said there was. The girlfriend's ex-girlfriend said there was. The investigator said he didn't find one during his forensic preview. Right, and that's why I suggest that this case defaults to apparent authority, which is just based on whether a reasonable officer would believe that she had apparent authority. And we can progress into apparent authority if the court wishes because there was no apparent authority here. I mean apparent authority is based on what the officer knew at the time of the search. And at the time of the search, what we know for a fact is that there was no probable cause to obtain a warrant in this case. The only thing that the officer had been told prior to the search was that the ex-girlfriend had observed something on his telephone, not on the computer, and that she was concerned about those images. So there was no probable cause to search the computer. He knew that. He also was well aware at the time because there were multiple interviews during the day. The first interview was only 30 minutes long. And during the interview, she said, I'm moving out. We have broken up. I'll take you to the apartment. I still have access to the apartment. But there was absolutely no indication whatsoever that she had access to the computer. The computer was unplugged on the floor of the living room with the side off. There was no keyboard. There was no monitor. There was no mouse. And the investigator didn't ask her, can you access this computer? Can you turn it on? It wasn't on. So it's not like the other cases where if you click the mouse and you bring the computer back from a sleep mode, that the computer was on and open and there were files accessible. The computer was utterly inaccessible in its current state. And at the time of the search, after a very brief interview, all the officer was aware of is that this wasn't her computer because she said that in the apartment prior to the search. It's not mine. I'm not taking it. I have a personal laptop. That goes to ownership, not whether she has. Well, I understand. But it's a reasonable inference that if someone is saying, look, that's all his stuff. This is all my stuff. I'm not accessing it. I'm not using it. I'm not taking it. But she also said we use this to play games. But she didn't say that until the second interview, which was after the original search occurred. So if we're talking about a parent authority, we must focus on what the officer knew at the time. And he did not know that at that time. All he knew was that she disclaimed ownership of it. He didn't ask her to turn it on. She couldn't access it. And she was moving out of the apartment and had seen something on a telephone. So there was not a parent authority. Now, the actual authority inquiry will focus later on that second interview because it's a totality of all the circumstances argument. But if we're focusing on a parent authority, it is limited to what the officer was aware of at the time. And that was nothing. She did not demonstrate any ability to access that computer. And, in fact, all of the evidence, I understand what the court's position is about the ownership interest. Property does not determine authority. However, it is inferable from that that she did not have the ability to access it at that time. You know, she didn't flat out say, I cannot turn this computer on. But all of the evidence, including the physical condition of the computer, in addition to what the officer knew of her living situation, goes to show that there was not actual or apparent authority in this case. And so I would ask the court to reverse the decision of the district court, find that there was no actual or apparent authority, although the district court did not make a finding on whether or not any officer's belief would have been reasonable. What we know from the investigator's own statements during the hearing is that he equated access to an apartment with access to a computer. So he said, well, she lived there. She had a key. I assumed it was okay. And that is focused on entry into the residence. But as I stated in the briefs, entry into a residence does not necessarily mean you have the authority to consent to electronic media. Computers are much more private and have a higher level of- Right. There's no question about that. Okay. Well, in that case, then the investigator's own stated belief at the evidentiary hearing was that access to the apartments made access to the computer. His subjective intent doesn't matter. Still. It is- Subjective is the ballist test. But objective- So it's based on what the facts were on the ground with the pre-search interview and what she said while he was in the apartment. Right. And if she said that's a family computer- She didn't. She didn't say that until the second interview, which was much longer. The first interview, all she said was that it was her apartment that she was moving out and that the computer was his. So there was no apparent authority. I'll save the rest of my time for rebuttal. Thank you. Thank you. Ms. Pollack. Mr. Phillips. Good morning, Your Honors. Counsel may please the court. Your Honors, I'd like to respond to a few points that were made. First was the statement that there was nothing in advance of the search that indicated that- that would have indicated to Investigator McNaught that Ms. Hamilton used the computer. On page 61 of the transcript to the hearing, he in fact states that she told her that she, before he ever asked to search the computer, that she could use the computer. I'd also like to respond to Your Honor's point that the ambiguity in the password protection suggests that we should merely be looking at apparent authority rather than actual authority. There's a distinct difference between a password withheld and a password given and forgotten. Alternatively stated, there's-the question is one of access to password, not necessarily memory of one. In this case, there is evidence-there certainly is ambiguity in the testimony with regard to the existence of a password, although the unambiguous evidence, the forensic examination showed that none existed.  The fact is that the forensic review, and I would also like to correct that it wasn't the forensic preview that showed that there was no password. It was in fact that the full forensic investigation later showed that there was no password on the registry. Couple that with some testimony that-or with McNaught's testimony that there was none-there's no evidence that there was a password. But even if there was, let's assume that there was a password. That's where the difference between a password forgotten and a password completely withheld, because if you watch the video, in minutes 53 to 57 of the video where she's talking about passwords, she says that if she needed a password, she would simply call Mr. Wright up and get the password, or that her kids memorized it. I mean, the fact is, yes, she didn't memorize the password, but that doesn't indicate a lack of access. The access is demonstrated by the fact that she used it when she needed, and admittedly she had her own computer, so she didn't use it that much, but she still had access to it. If the court has no further questions. According to the district court's account of the facts, she did say that it was kind of a family computer. That's a quote from the district court's opinion, that any time she or her children wanted to use it, they did. They watched movies. They played games. Hamilton used it to check the children's grades. That's all before the search, the first search. Is that an incorrect statement of the record by the district court? Did that information come out in the post-search interview? No, Your Honor, that was not an incorrect statement of the record. There were obviously two interviews, and aside from the two interviews, there was also conversation while he's in the apartment with her. Correct. Right, and this apparently, from my reading of the district court opinion, is occurring. He's gathering this information as he's in the apartment. Yes, Your Honor, we would agree with that statement. And so that is an accurate statement of the record, that she did say it was a family computer before the search. Yes, Your Honor, that is a reading of the record. Obviously there was no recording that's well known of the first interview, but, yes, that's an accurate statement. I believe it's in pages 35 to 37 of the transcript, where he, Investigator McNaught, discusses the questions he asked about the use of the computer beforehand. And a good illustration of the fact that that's an accurate statement is, in the longer interview, in the second, there were two videos that compiled that second interview. In the second part, I think it's about minute seven, or I apologize, but she, Ms. Hamilton, says, as I told you, I was looking for the movie Airplane, as I told you. And since that was never mentioned anywhere previously in that specific interview, the assumption is that she told her at some point previously. The court has no further questions. The government will ask that the court affirm the testimony. Thank you, Mr. Phillips. Thank you. Anything further, Ms. Pollack? Just briefly, the portion of the transcript that Mr. Phillips is referring to, pages 35 through 37, does not have a timing statement of when those statements were made. And, as a matter of fact, during the government's direct examination of Investigator McNaught, the two interviews were conflated in terms of what was said when, and it was extremely unclear as to when those things were said. Then on cross-examination, I was able to elicit from him the differences between the two interviews, and that is where my statement came from on cross-examination. She did not claim hardly anything about the use of the computer in the initial interview or while they were at the apartment. That came in the longer two-and-a-half-hour interview that came later. And so when the district court was making the findings on actual authority, of course it was permitted to consider the entirety of the circumstances, but if we're talking only about apparent authority, it must strictly be concerned with what occurred prior, and that is when she said to him nothing about the grades, et cetera, et cetera. That came in the video, and then he confirmed later through a forensic examination. So the position is the judge did chronologically set this out in his opinion. I might be recalling before the forensic search at the apartment includes statements by her that it's a family computer, they watch movies on the computer, they play games on the computer, et cetera. That's in the judge's factual findings. I'm of the position that those factual findings are clearly erroneous. This is on page 5-6 of the opinion. Yeah, I see where that is. And it does not specifically state the timing of those statements. No, it's clear from the context that this is before the forensic search because the next thing in the opinion is the forensic search at the apartment. And then the next thing after that is the second interview. True. But all she said was that multiple people use the computer. There is no evidence of the timing of that use of the computer. And what her later statement said, and, again, we're getting into the difference between actual and apparent authority, is that she did not have access to that computer, the evidence showed, for the month prior to the search because she simply was unusable to her because the wireless hotspot was with Mr. Wright at all times. And she made that clear. So the fact that it was a family computer doesn't really go towards her ability to even access it. And Mr. Investigator McNaught did not show that she could access it. He didn't ask her to access it. There was no password. There was no keyboard. There was no monitor. So saying that at one point in the past we've used it as multiple people have used it is not sufficient basis or a reasonable belief for the officer to search that computer. Thank you. The case will be taken under advisement.